## Case No. 15,061.

### UNITED STATES v. EVANS.

[19 Int. Rev. Rec. 118.]

District Court, E. D. Tennessee. April, 1874.

COUNTERFEITING—WITNESSES—DETECTIVES.

George Andrews, U. S. Dist. Atty.

E. C. Camp, for defendant.

EMMONS, District Judge, alluding to the claim of forbearance made for the defence because of their refusal to impeach the witness Dyer and show that he too had been engaged in passing counterfeit money, said in substance that the guilt of the defendant was proved quite irrespective of Dyer's credibility. No logical connection was seen between the assumed fact of his complicity and the punishment due to the prisoner. His honor saw in it only an additional reason for increased severity upon this whole class of offenders, so many of whom have been convicted and plead guilty during the present term. It is the temptations which they present to the young and inexperienced which bring to the bar so many novices in crime for whom a larger sympathy is felt and upon whom, consistent with justice, lighter punishment may be inflicted. The witness Dyer is a young man of prepossessing appearance. If we may assume the worst which is said of him it proves only that one more victim of these old dealers in counterfeit money has fallen a prey to their arts. His parents and kindred, or citizens who are interested in the safety of society, will fail to perceive in the fact that he had fallen any mitigation of the offence of the old and hardened criminal who had been one of the instruments of his fall.

The instrumentalities by which so large a number of offenders have now been brought to justice, the detective force of the government, have been but slightly referred to in the appeal made to the court; and certainly not in any manner demanding the dissent of the court on this occasion. As this case, however, owes its presence and result here to the skill and diligence of governmental employees, and as such agencies have been so frequently a subject of severe comment, he deemed it a duty briefly to call attention to the demonstration which the history of the present term afforded of the efficiency and beneficence of the system.

It had abundantly appeared that for many years in this district the passing of counterfeit money had become a methodized business. It had its manufacturers, its wholesale and retail dealers, many of whom were as well known and recognized in the community as the miller and the merchant. Magistrates, county clerks, members of the bar, and otherwise apparently respectable business men kept each other in countenance in the commission of this unpunished crime. Although arrests sometimes took place the most authoritative information warranted the declaration that convictions had not followed. The astounding and mortifying fact was presented that while public sentiment produced activity in the punishment of other high crimes this class of offenders perpetrated their wrongs with such impunity and frequency that the ordinary business of the country was seriously impeded. The numbers who were joining their ranks were rapidly increasing. Leading citizens appealed to the government for protection. Numerous suspected persons were pointed out, but proof of overt acts was found to be impossible. A detective force was sent to discover the necessary evidence for conviction. By a series of simple, yet skillful plans, large numbers of guilty parties were induced to offer their criminal wares for sale and display their possession in circumstances which removed all difficulty of proof. The gratifying result is that numerous old offenders, with still greater numbers of lesser criminals, whom they had deluded into their service, have been convicted and punished. That the agency has been efficient and successful is beyond all doubt. The only criticism which the court or a watchful public, jealous of the citizens' rights and careful to guard their reputation, can make of it is the danger that innocent parties may be seduced into crime by the agents of the government. His honor said he had examined the plans and methods of this action intended to prevent the possibility of such a consequence. Detail would be out of place here. All that would be appropriate would be to refer to actual results before us—to that which is proved by the records of the court. The extraordinary fact was true, that of the great number of indictments which stood for trial at the present term, pleas of guilty had been entered in nearly all, and in the few which have been brought formally before a jury, so clear and convincing was the proof that in not one of them had an address of any kind been made by counsel for the defence. The citizen might look upon this protective and necessary work without any fear that in the extent of its success and the rapidity of its execution a single citizen has been sacrificed by inadvertence or unscrupulousness.

If the detective force would continue this conscientious carefulness, adhere rigidly to those rules for their guidance so well calculated to insure the safety of their action, the time would soon come, if it had not already arrived, when counsel for the prisoner could no longer by a contemptuous emphasis of the word detective, and a sneering manner cast odium upon the calling. It will be as seldom attempted as the like unjust purpose now is in reference to the word judge. He believed there were few more useful arms of the public service than that which had so speedily brought to punishment so large a number of dangerous offenders.